## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OHIO

## AKRON DIVISION

| | |
|---|---|
| HARRY KALUSTIAN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>GOODYEAR TIRE & RUBBER CO.,<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff  Harry Kalustian ("Plaintiff"), brings this action against Defendant Goodyear Tire & Rubber Company ("Defendant" or "Goodyear"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this class action lawsuit on behalf of himself and a class of purchasers of Goodyear-brand Marathon RV tires, as well as current and former owners of RVs equipped at the time of purchase with new Goodyear-brand Marathon RV Tires.

2.      At all times relevant hereto, Defendant designed, manufactured, distributed, marketed, sold, and warranted Goodyear-brand Marathon RV Tires ("Marathon Tires") that suffer from one or more manufacturing and/or design defects that predispose them to premature, and in some cases, catastrophic failure (i.e., blowouts), as well as the development of dangerous bubbles and blisters along the tires' sidewall, a loss of pressure and flat tires, and tread separation early in the tires' lifetimes and well before applicable warranties have expired (the "Defect").

3.       Tires are the only vehicle components in direct contact with the road, and thus affect vehicle handling, riding, braking, and safety. If tires unexpectedly lose pressure or develop bubbles,

1

blisters, and tread separation, vehicle operators cannot safely control the vehicle in ordinary and foreseeable driving conditions, or use the brakes effectively upon encountering a hazard. The Defect thus exposes vehicle operators and occupants to a substantial safety risk.

4.      The Defect also poses a substantial safety risk because the Defect causes Marathon Tires to blowout or disintegrate suddenly and without warning during travel, greatly increasing the risk of accidents, and exposing vehicle operators and occupants to a substantial risk of bodily harm.

5.      Goodyear manufactured and sold Marathon Tires from at least 2000[1] through sometime in early 2017, when Goodyear elected to discontinue sales of the tires at all but a handful of discount retailers, likely in response to a deluge of reports concerning Marathon Tires failing suddenly at extremely low mileages. Despite longstanding knowledge of the Defect's existence, however, Goodyear refused to disclose the Defect to consumers and other direct purchasers or recall these dangerous automotive components.

6.      Even when Class members alert Goodyear to premature failure of Marathon Tires while still are under warranty, Goodyear denies that the Defect exists and asserts that the tires failed due to improper maintenance or installation and, at best, offers little more than a meager credit to be applied towards the purchase of Goodyear-brand tires—tires that vehicle operators cannot reasonably trust after experiencing the sudden and catastrophic failure of Marathon Tires. Goodyear's warranty practices leave Plaintiff and Class members with no choice but to pay out-of-pocket to replace tires consumers reasonably expected to last well in excess of applicable warranty periods.

7.      Despite notice and knowledge of the Defect from the numerous complaints received from customers, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records—including pre-sale durability testing—Goodyear has concealed the Defect's existence, has not recalled Marathon Tires, has not offered customers to replace their tires free of charge, and will not offer to reimburse customers who incurred out-of-pocket costs to replace failed Marathon Tires with a comparable, but more reliable, offering.

---

[1] The precise date on which Goodyear began to manufacture, distribute, and warranty Marathon Tires is unknown. However, a review of publicly available complaints made to the National Highway Traffic Safety Administration reveals that consumers complained about catastrophic failure of Marathon Tires as far back as 2000.

8.	In short, as a result of Defendants' unfair, deceptive, and/or fraudulent business practices, current and former owners of RVs equipped with new Marathon Tires, and individuals who purchased Marathon Tires for installation in their RVs, have suffered an ascertainable loss of money, property, and/or loss in value.  Goodyear's unfair and deceptive trade practices were undertaken in a manner giving rise to substantial aggravating circumstances.

9.	Had Plaintiff and Class members known of the Defect and the substantial safety risks posed thereby at the time of purchase they would not have purchased Marathon Tires and would have avoided the expense of replacing these defective tires far sooner than reasonable consumers expected. As such, Goodyear deprived Plaintiff and Class of the value for which they bargained when they purchased Marathon Tires.

10.	Accordingly, Plaintiff brings this action to redress Goodyear's violations of the Magnuson-Moss Warranty Act, and its breach of express and implied warranties.

## JURISDICTION & VENUE

11.	This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.	This Court has personal jurisdiction over Goodyear because it conducts substantial business in this judicial district, and intentionally and purposefully placed Marathon Tires into the stream of commerce within this judicial district and throughout the United States.

13.	Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Goodyear transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Additionally, Goodyear advertises in this district and receivedsubstantial revenue and profits from its sales of Marathon Tires in this district, including to members of the Class; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

### Plaintiff Harry Kalustian

14.     Plaintiff Harry Kalustian ("Plaintiff") is a citizen of the State of Texas and currently resides in Abilene, Texas.

15.     In January 2018, Plaintiff purchased for personal, family and/or household uses a new Prime Time Sanibel Fifth-Wheel RV from Fun Town RV, an RV dealer located in Cleburne, Texas. Plaintiff paid approximately $60,000 for his RV, which came equipped with four new, model number ST235/80R16E Goodyear-brand Marathon Tires.

16.     In June of 2018, a few short months after purchasing his RV and with only 1,100 miles on the odometer, Plaintiff was operating his RV near the Missouri-Oklahoma state-line when he noticed that the tire sensors he installed for prophylactic reasons were reporting abnormally high temperatures in one of the four Marathon Tires. Concerned for his safety, he brought his RV to a nearby truck repair facility, and asked to have his tire inspected. Much to his surprise, the technician informed him that not only was the tire's temperature elevated, its tread also had begun to separate and was within seconds of disintegrating. The technician swapped that tire for the RV's spare, and Plaintiff was forced to return home with the defective tire in tow.

17.     Upon returning home, Plaintiff contacted Fun Town RV to complain that the tire had nearly failed catastrophically and at an exceedingly low mileage. Fun Town informed him that it was not responsible for the vehicles tires and suggested he contact Prime Time, the RV manufacturer. Plaintiff contacted Prime Time and asked that it contact him in order to discuss his concerns, but Prime Time never responded.

18.     Plaintiff then purchased a replacement Marathon Tire from a Wal-Mart store located in Mineral Wells, Texas, at a cost of approximately $145.00. Because Plaintiff knew Goodyear had been manufacturing tires for decades, the tires equipped on his RV were relatively new, and he had no reason to suspect that Marathon Tires were inherently defective, Plaintiff elected to install a replacement Marathon Tire rather than incur the considerable cost of replacing all four tires with a competitor's offering.

4

19.     Unfortunately for Plaintiff, the trust he placed in his Marathon Tires proved unjustified. In August of 2018, with only 1,100 miles on the odometer, Plaintiff and his wife decided to take their RV from Texas to New England for a much-deserved vacation. About halfway through their journey, while driving in Georgia, below the sixty-five mile per hour posted speed limit due to heavy rainfall, one of the Marathon Tires installed in his RV unexpectedly experienced a blowout. Despite the inclement conditions and suddenness with which the tire failed, Plaintiff managed to safely pull his vehicle onto the shoulder and away from other vehicles. A fellow motorist came to his aid and helped him remove the failed tire and install a spare.

20.     Plaintiff slowly brought his RV to an Action Tire store in Forest Park, Georgia, where a technician inspected all four Marathon Tires. Upon completing his inspection, the technician informed Plaintiff that all four tires had prematurely worn, were separating and swelling, and required immediate replacement, and that, due to the extent to which the tires had already failed, the vehicle's wheels had become deformed and required repairs. Because he could not safely operate his vehicle in that condition, Plaintiff was forced to replace all four Marathon Tires with non-Goodyear brand tires at a cost of approximately $600.00. Plaintiff kept the three failed Marathon Tires that had not yet disintegrated. The replacement tires he purchased did, and continue to, perform well.

21.     Upon returning to Texas, Plaintiff visited Discount Tire, a seller of, *inter alia*, Goodyear-brand tires located in Weatherford, Texas, to inquire whether other RV owners had complained of premature wear and failure of Marathon Tires. The store manager informed him that many RV owners had reported their Marathon Tires disintegrating at extremely low mileages, and that he understood Goodyear had ceased selling Marathon Tires through all but a few discount retailers because of pervasive reports of premature tire failure.

22.     Based on his conversation with the manger, in October of 2018, Plaintiff contacted Goodyear directly to advise it that each and every Marathon Tire he installed in his RV had failed. Goodyear would offer him only a $99 credit for each of the three failed tires he had retained, and only if he used the credit within a week—ignoring that Plaintiff already replaced the defective tires in order to complete his trip and return home safely. Plaintiff declined Goodyear's unsatisfactory offer and decided to commence this action.

5

23. Goodyear did not disclose to Plaintiff the Defect's existence at any time either prior to or following his purchase of the Prime Time Sanibel RV equipped with Marathon Tires, or his purchase of the replacement Marathon Tire.

24. Plaintiff has suffered an ascertainable loss as a result of Defendants' omissions and misrepresentations relating to the Defect, including but not limited to the out of pocket loss he incurred in replacing Marathon Tires following their premature and unexpected failure. Had Goodyear refrained from making the misrepresentations and omissions alleged herein, Plaintiff would not have purchased a RV equipped with Marathon Tires and would have avoided the expense of replacing those tires on five separate occasions, as well as other incidental expenses he incurred in repairing his vehicle following premature tire failure.

**Defendant**

25. Defendant Goodyear Tire & Rubber Company ("Goodyear") is an Ohio corporation headquartered in Akron, Ohio. Goodyear has designed, manufactured, distributed, and warranted tires for over one hundred years, and currently manufactures tires for automobiles, commercial trucks, light trucks, motorcycles, SUVs, race cars, airplanes, farm equipment, and heavy earth-mover machinery, as well as recreational vehicles. Goodyear sells tires under various brand names, including Goodyear, Dunlop, Kelly Springfield and Douglas. Through its various subsidiaries and affiliates, Goodyear markets, distributes, and warrants its tires throughout the fifty States.

## TOLLING OF STATUTES OF LIMITATIONS

26. Any applicable statute(s) of limitations have been tolled by Goodyear's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

27. Goodyear was and remains under a continuing duty to disclose to Plaintiff and the members of the Class the true character, quality, and nature of Marathon Tires, that the Defect is the result of poor manufacturing processes, workmanship and/or design, and that it will require costly repairs and poses a safety concern. Yet Goodyear has refused to disclose the Defect to the public or recall unreasonably dangerous Marathon Tires.

28.     Indeed, Goodyear has a pattern or practice of concealing defects in its products not just from the public, but also from regulators like the NHTSA. Goodyear, in fact, stands accused of concealing for decades an eerily similar defect in its G159 RV tires. Goodyear manufactured, distributed, and warranted G159 tires for use with RVs from 1996 despite knowing the tires were unsuited for that ordinary and intended purpose, and were predisposed to heat-induced failure. Between 1996 and 2009, Goodyear learned of approximately 98 injuries and/or deaths involving G159 tires, yet used confidentiality orders and confidential settlements to conceal its findings from the public and prohibit injured consumers and their estates from notifying NHTSA of the many accidents caused thereby. Only in late 2017 did NHTSA learn the full scope of Goodyear's efforts to conceal the defects in G159 tires and commence a formal investigation.

29.     On information and belief, Goodyear has engaged in a similar practice with respect to Marathon Tires, a fact Plaintiff will be able to prove only through discovery.

30.     As a result of Goodyear's active concealment, any statutes of limitation otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

### The Marathon Tires Are Defective

31.     Goodyear is one of the world's leading manufacturers of automotive tires, including tires for use with RVs. Goodyear even publishes a website dedicated to its various lines of RV tires.[2]

32.     Just prior to discontinuing production of G159 tires in 2003—following dozens of deaths caused by RV tires that, like Marathon Tires, were unsuited for use with RVs and prone to premature and catastrophic failure—Goodyear debuted its Marathon-line of RV tires, one of its "premium tire lines for camping enthusiasts . . . optimized for on-/off-road conditions required for camping." [3]

33.     Goodyear designed Marathon Tires to be compatible with many types of RVs, including "travel trailers, pop-up campers, boat trailers and fifth wheel trailers",[4] and thus knows that reasonable

---

[2] *See* https://www.goodyearrvtires.com/default.aspx (last visited Oct. 31, 2018).
[3] https://web.archive.org/web/20130814073456/http://www.goodyearrvtires.com/pdfs/tire-care-guide.pdf (archived Aug. 13, 2013).
[4] *Id.* (archived Aug. 13, 2013).

7

consumers expect Marathon Tires to perform over long distances. Goodyear, in fact, acknowledged that Marathon Tires were "specifically designed for trailer towing[,]" and claimed they would "make trailer towing easier, more stable and more economical" and "[d]eliver[] dependable highway stability, positive traction and long lasting wear."[5]

34.     In an effort to induce consumers to select tires from the Marathon-line over those of competitors, Goodyear also touted Marathon Tires' purported performance properties. In a brochure available on its dedicated RV website and thus intended for RV owners and retailers, Goodyear claimed it produced Marathon Tires utilizing "[c]ompounding [to] help[] tires resist weather cracking; "[s]cuff guards [t] help resist sidewall damage from curbing"; and "[t]read built for high mileage".[6]

35.     Goodyear further enticed consumers by offering an extensive warranty through which it agrees to cover the very issues complained of herein.

36.     Subject to certain exclusions, Goodyear warrants that tires "that become unserviceable due to a covered warranty condition during the first 2/32" (inch) treadwear or 12 months from date of purchase, whichever comes first, will be replaced with a comparable new Goodyear tire without charge."[7] "Goodyear tires not eligible for no-charge replacement that become unserviceable due to a covered warranty condition will be replaced on a prorated basis[,]" which is "calculated by multiplying the current Goodyear advertised selling price at the adjustment location by the percentage of usable original tread that has been worn off at the time of adjustment."[8]  The warranty applicable to Marathon Tires "ends when the treadwear indicators become visible or six (6) years from the date of purchase, whichever occurs first."[9]

37.     Due to a manufacturing and/or design defect, however, Marathon Tires are unsuited for the ordinary and intended purpose of providing safe and reliable transportation in an RV. On information and belief, Marathon Tires—much as the G159 line—cannot withstand extended travel at high speeds, due either to a defect in design or material composition. Marathon Tires instead develop

---

[5] https://web.archive.org/web/20131010010132/http://goodyearrvtires.com/tire-selector.aspx (archived Oct. 10, 2013).
[6] https://web.archive.org/web/20130814073456/http://www.goodyearrvtires.com/pdfs/tire-care-guide.pdf (archived Aug. 13, 2013).
[7] *Id.*
[8] *Id.*
[9] *Id.*

bubbles and blisters or inflate near the seams, all of which ultimately contribute to sudden and unexpected tire disintegration, otherwise known as a blowout.

38. Most troubling of all, Plaintiff and other Class members report that Marathon Tires fail at extremely low mileages, and often only shortly after purchase. Although Goodyear markets its RV tires as capable of providing safe and reliable transportation for *years*, Marathon Tires routinely fail to survive for one year.

39. The Defect imposes significant and unexpected safety risks on vehicle owners. The symptoms of premature tire failure described above can inhibit vehicle operation—even in ordinary driving conditions, but also at high speeds or in inclement weather—and tire disintegration often results in a loss of vehicle control, particularly at highway speeds, exposing vehicle occupants and other drivers to a substantial and unreasonable risk of bodily harm, even death.

40. On information and belief, the Defect is so pervasive that Goodyear discontinued the Marathon line sometime in late 2016 or early 2017, much as it discontinued G159 tires in 2003 following seven years of customer complaints and civil litigation arising from a defect in that line of RV tires.

41. Unfortunately for Plaintiff and Class members, and despite its own longstanding knowledge that Marathon Tires are inherently defective, Goodyear refuses to replace failed tires at no cost, even within applicable warranty periods. Many Class members, including some of those whose complaints to the NHTSA are transcribed below, presented their tires to Goodyear for warranty coverage only for Goodyear to claim that those consumers underinflated or improperly maintained their tires, thus excluding them from warranty coverage.

42. Goodyear's purported warranty limitations, however, are unenforceable. Goodyear provides these warranties to buyers after the purchase is completed, and does not provide this information to purchasers of vehicles in which the tires are pre-equipped, including Plaintiff. Buyers also lacked pre-sale knowledge of the Defect or the ability to bargain as to the terms of the Goodyear's warranty.  Accordingly, the limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Goodyear and Plaintiff and the other Class members, as, at the time

of purchase, Plaintiff and the other Class members had no other options for purchasing warranty coverage for their Marathon Tires.

43. The limitations on the warranties, including the durational limits Goodyear attempts to impose on its express limited warranties and its efforts to disclaim the implied warranty of merchantability, also are substantively unconscionable. Goodyear knew that the Marathon Tires were defective and would continue to pose safety risks after the warranties purportedly expired, yet failed to disclose these defects to Plaintiff and the other Class members. Goodyear's enforcement of those limitations and disclaimers is therefore harsh and shocks the conscience.

44. Because Marathon Tires are inherently defective, Goodyear's replacement warranty also fails in its essential purpose. Class members assert that regardless of whether Goodyear agrees to pro-rate replacement tires or provide them at no cost, Goodyear replaced failed Marathon Tires with the very same inherently defective product. Thus, Goodyear provided Class members with inherently defective Marathon Tires that were guaranteed to fail prematurely and catastrophically, depriving them of the benefit of the warranty for which they bargained.

**Goodyear's Knowledge of the Defect**

55. On information and belief, Goodyear learned of the Defect at least as early as 2000, long before Plaintiff and most Class Members purchased Marathon Tires, through sources such as pre-release evaluation and testing; warranty claim and replacement part sales data; early consumer complaints made directly to Goodyear or collected by NHTSA ODI; testing done in response to those complaints; and aggregate data from Goodyear dealers, as well as through other internal sources unavailable to Plaintiff prior to discovery.

      **1.**     **Goodyear's Knowledge of the Defect Gained from Pre-Release Design, Manufacture, Engineering, and Testing Data**

56. During the pre-release process of designing, manufacturing, engineering, and testing the Marathon Tires, Goodyear necessarily would have gained comprehensive and exclusive knowledge about the Marathon Tire's durability and performance, particularly the basic engineering principles

10

behind the construction and function of the Marathon Tires and the expected conditions and uses the Marathon Tires would encounter in ordinary customer service.

57.     Goodyear conducts significant durability and performance testing on all tires, including Marathon Tires. Goodyear's testing is extensive, and includes but is not limited to: crown (tread) durability testing; heat rise testing, intended to evaluate product performance as tire temperatures increase at elevated weights and speeds; and bead durability testing.[10] And as Goodyear itself asserts, its tires "undergo rigorous testing and inspection throughout the product release and production process to ensure [Goodyear's] specifications are met. And before they are shipped, [Goodyear's] tires are tested for uniformity, visually inspected and evaluated to make sure they conform to [Goodyear's] rigorous standards."[11]

58.     Federal law also required Goodyear to subject Marathon Tires to additional tests in order to secure approval from the Department of Transportation to sell those tires in the United States. Government-mandates tests examine, *inter alia*, heat resistance, tread endurance and traction.

59.     Each and every one of these voluntary and legally-mandated pre- and post-release tests did alert (or should have alerted) Goodyear to the Defect in Marathon Tires that predisposes them to sudden, premature failure and renders them unsuited for their ordinary and intended purpose.

60.     Goodyear also subjects suppliers of raw materials and finished components to a rigorous audit process, and informs its suppliers that conducts random sampling on all incoming product lots.[12] These tests also alerted Goodyear to the existence of the Defect in Marathon Tires.

---

[10] http://www.safetyresearch.net/blog/articles/goodyear-headed-nhtsa-sanctions (last visited Oct. 31, 2018).
[11] https://www.godanriver.com/work_it_sova/news/goodyear-responds-to-national-article/article_4479b826-e125-11e7-8843-1709e39ab9db.html (last visited Oct. 30, 2018).
[12] Global Supplied Quality Manual, pp. 12, 17 (attached as Exhibit A)

61.     As a result, Goodyear knew or should have known that the Marathon Tires are defective and prone to premature failure.

### 2.     Goodyear's Knowledge of the Defect from Warranty Claim Data

62.     Goodyear also knew of the Defect because of the large number of claims for Marathon Tire replacements made during the tires' warranty periods.

63.     Consumers complain that the Defect often causes Marathon Tires to fail at low mileages, within the warranty period. But in order to provide warranty coverage for a Marathon Tire—whether a no-charge replacement or pro-rated coverage—authorized Goodyear dealers must first secure approval from Goodyear itself. The number of warranty claims submitted in connection with Marathon Tires thus should have alerted Goodyear to the Defect inherent therein.

64.     In addition, Goodyear will not agree to provide warranty coverage for Marathon Tires unless Class members retain the failed tires and provide them to Goodyear for inspection and testing in order to identify pervasive defects and root causes.  Through these efforts, Goodyear undoubtedly learned of the Defect in Marathon Tires.

### 3.     Goodyear's Knowledge of the Defect Gained from Class Member Complaints Made Directly to Goodyear

65.     Upon information and belief, Goodyear also knew or should have known about the Defect because numerous consumer complaints regarding failures of the Marathon Tires were made directly to Goodyear. The large number of complaints, and the consistency of their descriptions of the Marathon Tires' failures, including the Marathon Tires blowing out while Class Members were driving their vehicles, should have alerted or actually alerted Goodyear to this serious Defect affecting a wide range of its Marathon Tires.

66.     The full universe of complaints made directly to Goodyear about the Defect is information presently in the exclusive custody and control of Goodyear and is not yet available to Plaintiff prior to discovery. But as the exemplar NHTSA complaints transcribed *infra* clearly demonstrate, there is no doubt that many Class members complained directly to, and sought warranty coverage from, Goodyear shortly after experiencing a sudden and catastrophic failure of a Marathon Tire

67.     In short, Class members have been vocal in complaining directly to Goodyear about the Defect, and the number and consistency of their complaints should have alerted Goodyear to the Defect.

### 4.     Goodyear's Knowledge of the Defect from Class Member Complaints Lodged with NHTSA

68.     In addition to complaints made directly to Goodyear, many Marathon Tire owners lodged complaints about the Defect with NHTSA ODI.

69.     Federal law requires tire makers like Goodyear to be in close contact with NHTSA regarding potential defects in motor vehicle equipment such as tires, and imposes a legal requirement, backed by criminal penalties, to disclose tire defects to NHTSA, as well as supporting documentation in the form of field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

70.     Thus tire manufacturers should (and do) monitor NHTSA databases for consumer complaints regarding their tires as part of the tire manufacturers' ongoing obligation to identify potential defects in their products, such as the Defect here at issue.

71.     From its monitoring of the NHTSA databases, Goodyear knew or should have known of the many complaints about the Defect in Marathon Tires logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Goodyear to the Defect.

13

72.     A sampling of the dozens of publicly available complaints lodged with NHTSA ODI includes the following:

**Date Complaint Filed:** 06/02/2004
**Date of Incident:** 07/12/2003
**Component(s):** TIRES
**NHTSA ID Number:** 10074686
**Consumer Location:** BELLEVUE, NE

In June 2003 I bought a 2003 travel supreme express 5th wheel trailer. This RV trailer had 6 new Goodyear marathon P235/80R16 Load Range "D" tires. With less than 1000 miles on them I had the first of 3 tire failures. The first indication of a problem was a 4 inch bubble on the outside side wall. A short time after the discovery of the bubble the tire blew out. The tire was removed and replaced with another tire of the same brand and specifications. No thought of defective tires yet! Less than 1500 miles later I experience another tire failure. The tire was removed and replaced with identical tire again. Now I have beginnings of doubts about safety and quality of tires. I finished my summer travels in October 2003 with approximately, to the best of my ability to calculate, less than 8000 miles on the original 4 remaining tires. This year, May 2004, I removed my RV from storage for another trip. Less than 50 miles from home I have another, 3rd, tire failure. Another bubble on the outside side wall. I return home and take the RV to the local Goodyear for safety to replace the remaining 3 original tires at no expense to me but as yet they are only willing to prorate the tires based on the remaining tread depth on the tires. I believe the tires are defective and are a continuing safety hazard. I will happily provide any other information requested. *AK

**Date Complaint Filed:** 07/12/2005
**Date of Incident:** 07/07/2003
**Component(s):** TIRES
**NHTSA ID Number:** 10128465
**Consumer Location:** NAZARETH, PA

DT: On our way on vacation with a travel trailer and had a blow out. While coming home on vacation had 2 more blow outs. The tires just blew apart and shredded. The first that blew out was on the left front of travel trailer and the second were bother rights side back tires blew at the same time. On the both occasions was traveling 55-60 miles per hour. This also did damage to the trailer itself and to the rims. Had to replace the rims and tires at cost of $684.00, plus the $65.00 for the first tire. The make of this tire is Goodyear Marathon, size is 2357515, this is original equipment. And the tire tread is between 9-10/32. The reason for this complaint, caller stated that he could accept one blow out but it became a life threaten experience when 2 tires blow out at one time. This is a safety defect on this tires. *NM

**Date Complaint Filed:** 07/07/2006

14

**Date of Incident:** 07/02/2006
**Component(s):** TIRES
**NHTSA ID Number:** 10161772
**Consumer Location:** GILBERT, AZ

In 2002 I purchased a new boat from Sea Ray Boats with a Shorelander Trailer. It is equipped with Goodyear Marathon Tires in size 215/75R14. They are C Load rating tires with 1870 lb rating. The boat and trailer are 5500 lb maximum with all equipment and full load of fuel. Last fall in October while driving to the lake at highway speed the left front tire exploded. I pulled over and put on the spare. Goodyear replaced the tire. Two weeks after that while prepping the boat and trailer for another trip, I always check tires, wheels and bearing condition before towing, I noticed two of the tires had bulges in the tread. I took them to the store and Goodyear replaced them. Of course every time a tire got replaced I had to pay a pro-rate, mount and balance charges, and taxes. I requested Goodyear replace the fourth tire since it was the only remaining tire in use that didn't fail. They replaced it as a peace of mind gesture. Now just this past weekend 7/2/06, I checked over the trailer as usual and all was ok. Then as I was pulling out of the driveway I saw something funny in the mirror. When I got out to inspect it I found one of the tires they just replace had a giant bulge in the side wall the little nubs haven't even worn of the tire yet it's so new. Boy was I mad!!!!!! Goodyear is replacing it for no charge this time. When I asked about getting different tires they said there was nothing they could do. This tire should be recalled for safety reasons. They are unsafe. *NM

**Date Complaint Filed:** 12/29/2006
**Date of Incident:** 11/13/2006
**Component(s):** TIRES
**NHTSA ID Number:** 10177351
**Consumer Location:** AUBURN, CA

Concerns Goodyear Marathon Radial D Rated Trailer Tires 225/15 our fifth wheel cam with 4 of them on. There was a recall and we got all new tires. Those proceeded to start wearing from the inside out also my husband took them to good year and got a reduction in price you know pro rate as good tread still (not much of one!!!!) and got all new tires again. This was about 3 years ago. The trailer has been approximately 7,000 miles or less since then. We keep the tires covered in our driveway. Guess what they are bubbling and wearing from the inside out again. One blew out on freeway and almost caused us an accident. Now a RVDealership just pointed out to us another tire has 2 bubbles in it. Again they have perfectly good tread on them. We are going to replace them tomorrow. We are not going to buy Goodyear brand tires!!! Goodyear should be shot for selling them as trailer tires. The RV people who put them on there must be in cahoots with Goodyear and get a huge discount and they should also be shot. I would not recommend their trailer tires to anyone. I think if I find a consumers place to complain like the Attorney General or whoever I shall send them a copy of this letter to. Sincerely Mrs. Lynn Seaberg

**Date Complaint Filed:** 08/22/2007
**Date of Incident:** 08/03/2007

**Component(s):** TIRES , TRAILER HITCHES
**NHTSA ID Number:** 10200518
**Consumer Location:** WHITMORE LAKE, MI

Goodyear Marathon ST265/80 R16. Manufactured in 2003. Installed on 5th Wheel Trailer in 2004. Had 1st blowout summer 2006 on interstate. This year I had 3 sidewall failures on the other tires. 2 of the 3 had large bulges (3-4 inches diameter) in the sidewall when the tire was hot. When the tire cooled the bulge increased by a factor of 4. The other failure had splits in the center of the sidewall. All of the Goodyear dealers tried to make me believe that these failures were my fault. I kept the last failed tire. Coincidently I ran into a gentleman at the Goodyear Dealer in Albuquerque NM who identified himself as a retired Goodyear engineer from Akron, OH. He told me that this failure was typical of a compounding problem. *TR

**Date Complaint Filed:** 11/30/2007
**Date of Incident:** 11/17/2007
**Component(s):** TIRES
**NHTSA ID Number:** 10210417
**Consumer Location:** DALLAS, TX

I emplore [sic] you to start investigating the common use of ST Rated Radial Trailer Tires on today's trailers and fifth wheel trailers. I just purchased a new 2006 holiday rambler 30cks travel trailer that rides on 4 Goodyear ST 225/75/R16 Marathon Tires. I had all 4 tires suffer sidewall failure after no more than 500 miles. I ran the tires at 65 PSI per manufacturers recommendations, and have certified cat scale readings showing I'm within weight for tires and vehicle. I had the tires inspected at a Goodyear dealer and had a very frank conversation with the owner. He whole heartedly feels that the tires are not up to the kind of service that they see hauling around these big dual axle travel trailers. I paid $1200 of my own money (no complaining) to upgrade to commercial truck tires (Goodyear helped me pick the correct tires). I refused to risk my family's life towing a trailer with these tires – there are reports all over the internet about these tires – now made in China to boot! It really hit home when the Goodyear dealer owner could not tell me in good faith that I was safe using these tires. By the way I'm a mechanical engineer with 15 years' experience designing heavy industrial equipment. Suitable tires exist, but the manufacturers don't spec them to save money. Most people aren't as savvy as I am about these things, I feel sorry and worried about all their lives! Please help! I'm more than willing to give more information as requested. Thanks! *TR

**Date Complaint Filed:** 09/16/2008
**Date of Incident:** 08/07/2007
**Component(s):** TIRES
**NHTSA ID Number:** 10242481
**Consumer Location:** Unknown

TL*The contact owns a 2008 Airstream Classic Limited (NA). The vehicle has Goodyear marathon tires, size 225/75R/15 (NA). All four tires were defective. There was extensive

16

tread belt separation, which resulted from both the design and manufacturer defects. The vehicle was taken to an independent mechanic and the four defective tires were replaced. The manufacturer agreed to reimburse the replacement tires. The failure mileage was 6,900 and current mileage was 18,000. Updated 12-04-08 *BF Air was seeping into the liner of the tire. The second failure was noticed on the left rear tire which was delaminating. The third tire failure was instant blowout. Updated 12/10/08 *JB

**Date Complaint Filed:** 05/27/2011
**Date of Incident:** 08/20/2010
**Component(s):** TIRES
**NHTSA ID Number:** 10402908
**Consumer Location:** LOS ALAMOS, NM

I have a 2009 Keystone Challenger 5th wheel that came with Goodyear marathon ST235/80/16 tires. Traveling along the Oklahoma turnpike the right front tires exploded without warning. The tire pressure had been check that morning and the tires had been visually inspected within 30 minutes of the failure. Goodyear states there is no problem with their tires and refused replacement. However, you have 79 similar complaints on these tires listed on your webpage. This cause significant damage to the fifth wheel and caused me to swerve into the other lane, luckily the vehicle next to me was able to move over and avoid me. This was a very close call. While changing tire on side of road we were nearly struck by a semi-truck. *TR

**Date Complaint Filed:** 06/19/2012
**Date of Incident:** 06/03/2011
**Component(s):** TIRES
**NHTSA ID Number:** 10462646
**Consumer Location:** MIDWEST CITY, OK

Letter from Congressman Cole's office on behalf of constituent, re his recent experience with Goodyear Tire Company *TGW the consumer experienced two tire blow outs simultaneously. Two days later another tire blew out and soon after, the fourth tire blew out. The consumer requested reimbursement from Goodyear, but was denied based on the fact, the tires were no longer available for inspection. The RV was damaged when the tires blew out. The consumer had to file a claim for damages to the fender skirting and sides of the camper. *JB

**Date Complaint Filed:** 06/18/2013
**Date of Incident:** 04/08/2013
**Component(s):** TIRES
**NHTSA ID Number:** 10520421
**Consumer Location:** SOPCHOPPY, FL

The contact owns a 2005 Pilgrim Open Road Trailer equipped with Goodyear Marathon ST235/80/R16 (DOT OHUN1LHR). The contact stated that while driving approximately 65 MPH, the driver's side front tire blew. Additionally, the rear passenger's side tire blew,

causing damage to the vehicle. The manufacturer of the tires was made aware of the failure. The tires were replaced. The vehicle damage was not repaired. The approximate failure mileage was 7,000. The vehicle failure mileage was unknown. *TR

**Date Complaint Filed:** 02/13/2015
**Date of Incident:** 11/01/2014
**Component(s):** TIRES
**NHTSA ID Number:** 10683350
**Consumer Location:** NOKOMIS, FL

TL* The contact owns a 2011 Forest River Work and Play (NA) Camper equipped with four Goodyear Marathon tires, size ST235/80R16 (NA), while driving approximately 5 MPH, the rear passenger side tire suddenly blew out and shredded causing damage to the rear fender. The cause of the failure was not diagnosed. The contact also experienced the same failure on the rear driver side tire. While driving approximately 40 MPH, the rear driver side tire suddenly blew out causing damage to the rear fender. The failure was not diagnosed. The manufacturer was not notified of the failures. The tire and vehicle failure mileage was 10,000. Updated 04/13/15(LJ Updated 11/12/15*JS

73.     The timing of the aforementioned complaints, coupled with the other means through which Goodyear monitors tire quality and performance, clearly establish that Goodyear had knowledge of the Defect prior to the time of sale of all Marathon Tires.

74.     Despite its longstanding knowledge of the Defect in Marathon Tires, Goodyear did not disclose the Defect's existence to Plaintiff or Class members, either in advertising, at the point-of-sale, or after purchase. Goodyear has not recalled Marathon Tires, issued a voluntary adjustment program, or even informed Class members of the Defect's existence and the serious and unjustifiable safety risks it imposes upon them.

## CLASS ALLEGATIONS

75.     Plaintiff brings this action on his own behalf, and on behalf of the following class pursuant to Federal Rule of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3).

> **Texas Class**:
>
> All persons or entities in Texas who purchased Goodyear Marathon Recreational Vehicle Tires, or who purchased a recreational vehicle equipped with new Goodyear Marathon Recreational Vehicle Tires.

76.     Pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiff also seeks to represent the following subclass:

**Warranty Denial Subclass:**

> All persons or entities in the United States who presented their Goodyear Marathon Recreational Vehicle Tires to Goodyear, or a Goodyear authorized dealer, for replacement following tire failure within six years of purchase and incurred out-of-pocket costs to replace a failed tire.

77.     The Texas Class and the Warranty Denial Subclass shall be collectively referred to herein as the "Class."  Excluded from the Class are Goodyear, its affiliates, employees, officers and directors, persons or entities that purchased Marathon Tires for resale, and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

78.     <u>Numerosity</u>:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Goodyear and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that Goodyear sold hundreds of thousands of Marathon Tires throughout the United States.

79.     <u>Existence and Predominance of Common Questions of Fact and Law</u>:  Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to whether:

    a.  Marathon Tires are defective;

    b.  Goodyear knew of the Defect but failed to disclose the problem and its consequences to its customers;

    c.  a reasonable consumer would consider the Defect or its consequences to be material;

    d.  Marathon Tires are unsuited for the ordinary and intended purpose of providing safe and reliable transportation in an RV;

    e.  Goodyear has failed to provide free repairs as required by its express limited warranty;

    f.  Goodyear's warranty limitations and disclaimers are unconscionable and unenforceable; and

    g.  Goodyear's conduct violates the state statutes described below.

80.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased inherently defective Marathon Tires, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Goodyear's wrongful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

81.     <u>Adequacy</u>:  Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class he seeks to represent, he has retained counsel competent and highly experienced in complex consumer class action litigation, and he intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

82.     <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by each individual Class Member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Goodyear's conduct.  It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Department of Transportation certification numbers printed on each tire, and Goodyear's records concerning consumer warranty claims and complaints.

83.     Goodyear has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## **FIRST CAUSE OF ACTION**

## **BREACH OF EXPRESS WARRANTY**

84.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

85.     Plaintiff Harry Kalustian brings this claim on behalf of himself and the Class, and, in the alternative, the Texas Class and the Warranty Denial Subclass.

86.     Goodyear is and was at all relevant times a "merchant" with respect to Marathon Tires.

87.     Goodyear enticed consumers to purchase Marathon Tires by offering an extensive warranty through which it agrees to cover the very issues complained of herein.

88.     Subject to certain exclusions, Goodyear warrants that tires "that become unserviceable due to a covered warranty condition during the first 2/32" (inch) treadwear or 12 months from date of purchase, whichever comes first, will be replaced with a comparable new Goodyear tire without charge."  "Goodyear tires not eligible for no-charge replacement that become unserviceable due to a covered warranty condition will be replaced on a prorated basis[,]" which is "calculated by multiplying the current Goodyear advertised selling price at the adjustment location by the percentage of usable original tread that has been worn off at the time of adjustment."   The warranty applicable to Marathon Tires "ends when the treadwear indicators become visible or six (6) years from the date of purchase, whichever occurs first."

89.     As described above, the Defect present in Marathon Tires renders them unserviceable, typically within the "no charge" warranty period, or shortly thereafter. Goodyear, however, typically refuses to replace unserviceable tires at no charge, and instead contends Marathon Tires failed due to improper maintenance or use.

90.     The Defect substantially impairs the use, value, and safety of Marathon Tires to reasonable consumers, including Plaintiff and Class Members.

91.     Goodyear knew of the Defect when it expressly warranted Marathon Tires and failed to inform Class Members that Marathon Tires had the Defect, and induced Plaintiff and Class Members to purchase Marathon Tires under false and/or fraudulent pretenses.

92.     Goodyear is obligated, under the terms of its express warranties, to effectively replace Marathon Tires within a reasonable time for Plaintiff and Class Members.

93.     Goodyear breached its express warranties by supplying Marathon Tires to Plaintiff and Class Members with the Defect, by failing to provide repairs within a reasonable time, and by replacing failed Marathon Tires with equally defective replacement tires instead of providing a one-time, effective fix.

94.     Goodyear also breached its express warranties by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold Marathon Tires to Plaintiff and Class members.

95.     As more fully detailed above, Goodyear was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources, including Plaintiff and Class members.

96.     Plaintiff has given Goodyear a reasonable opportunity to cure its failures with respect to its warranties, and Goodyear has failed to do so.

97.     Affording Goodyear any further opportunity to cure its breach of written warranties is unnecessary and futile here.

98.     Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Class Members whole.

99.     Accordingly, recovery by Plaintiff and the Class is not restricted to any written warranties promising to repair and/or correct defects, or limiting the Goodyear's liability with respect thereto, and they seek all remedies as allowed by law.

100.     In its capacity as a warrantor, and by the conduct described herein, any attempt by Goodyear to limit or disclaim the express warranties, or the remedies available as a breach thereof, in a manner that would exclude complete coverage for the Defect and any direct, incidental or consequential damages, is unconscionable as a matter of law because the relevant purchase transactions were tainted by Goodyear's concealment of material facts. Thus any such effort by Goodyear to disclaim, or otherwise limit, its liability for the Defect is null and void.

22

101.     As a direct and proximate result of Goodyear's breach of express warranties, Plaintiff and Class members received goods that have substantially impaired value and that have caused them to incur significant out-of-pocket expenses, and have suffered damages in an amount to be determined at trial.

102.     Plaintiff and Class Members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

<u>SECOND CAUSE OF ACTION</u>

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

103.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

104.     Plaintiff brings this claim on behalf of himself and the Class, and, in the alternative, the Texas Class and the Warranty Denial Subclass.

105.     A warranty that Marathon Tires were in merchantable condition fit for the ordinary purpose for which tires are used is implied by law.

106.     Plaintiff and other Class Members who purchased a Class Tire directly from Goodyear are entitled to the benefit of their bargain: a Tire that does not fail to function.

107.     Goodyear breached this implied warranty in that Marathon Tires are (1) not fit for ordinary use, and (2) not of a merchantable quality.

108.     The Defect is latent and was present at the time of sale, and therefore Marathon Tires were not merchantable at the time of sale.

109.     Had the Defect that existed at the time of sale been known, Marathon Tires could not have been sold, or could not have been sold at the same price.

110.     Goodyear's attempts to disclaim the implied warranty are ineffective. Goodyear failed to clearly disclose to Plaintiff and Class members its intent to disclaim the implied warranty prior to their purchasing Marathon Tires.

111.     Any attempt by Goodyear to limit or disclaim the implied warranty, or the remedies available as a breach thereof, in a manner that would exclude complete coverage for the Defect and any direct, incidental or consequential damages, also is unconscionable as a matter of law because the

relevant purchase transactions were tainted by Goodyear's concealment of material facts. Thus any such effort by Goodyear to disclaim, or otherwise limit, its liability for the Defect is null and void.

112.    As a direct and proximate result of Goodyear's breach of the implied warranty of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

## BREACH OF WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

113.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

114.    Plaintiff and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

115.    Goodyear is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

116.    The Marathon Tires are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

117.    Goodyear's warranties for the Marathon Tires is a "written warranties" within the meaning of 15 U.S.C. §2301(6).

118.    Goodyear breached its express and implied warranties by supplying Marathon Tires to Plaintiff and Class Members with a Defect that renders them unsafe and unsuited for their intended purpose, by failing to provide repairs within a reasonable time, and by replacing failed Marathon Tires with equally defective tires.

119.    Goodyear breached its warranties by failing to repair Marathon Tires and by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold Marathon Tires to Plaintiff and Class Members.

120.    Goodyear's breach of warranties has deprived Plaintiff and the other Class Members of the benefit of their bargain.

121.    Goodyear also breached its warranties by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold Marathon Tires to Plaintiff and Class members.

122.    As more fully detailed above, Goodyear was provided with appropriate notice and has been on notice of the Defect and of its breach of its warranties from various sources, including Plaintiff and Class members.

123.    Plaintiff has given Goodyear a reasonable opportunity to cure its failures with respect to its warranties, and Goodyear has failed to do so.

124.    Affording Goodyear any further opportunity to cure its breach of written warranties is unnecessary and futile here.

125.    Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Class Members whole.

126.    Accordingly, recovery by Plaintiff and the Class is not restricted to any written warranties promising to repair and/or correct defects, or limiting the Goodyear's liability with respect thereto, and they seek all remedies as allowed by law.

127.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Goodyear to limit or disclaim the its warranties, or the remedies available as a breach thereof, in a manner that would exclude complete coverage for the Defect and any direct, incidental or consequential damages, is unconscionable as a matter of law because the relevant purchase transactions were tainted by Goodyear's concealment of material facts. Thus, any such effort by Goodyear to disclaim, or otherwise limit, its liability for the Defect is null and void.

128.    In addition, Goodyear's attempts to disclaim the implied warranty are ineffective. Goodyear failed to clearly disclose to Plaintiff and Class members its intent to disclaim the implied warranty prior to their purchasing Marathon Tires.

129.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

130.    As a direct and proximate cause of Goodyear's breach of the written warranties, Plaintiff and the other Class Members sustained damages and other losses in an amount to be determined at trial. Goodyear's conduct damaged Plaintiff and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory fees and/or other relief as deemed appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

A.  determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.  appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.  award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class are entitled;

D.  award pre-judgment and post-judgment interest on such monetary relief;

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Goodyear to recall and/or replace Marathon Tires and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the Defect;

F.  award reasonable attorneys' fees and costs; and

G.  grant such further relief that this Court deems appropriate.


Dated:  November 9, 2018                    Respectfully submitted,


By:_____ */s/Daniel R. Karon*_____
            Daniel R. Karon (#0069304)
            Beau D. Hollowell (#0080704)
            **KARON LLC**
            700 W. St. Clair Ave., Suite 200
            Cleveland, OH 44113
            Telephone: (216) 622-1851
            E-mail:      dkaron@karonllc.com

26

bhollowell@karonllc.com

Joseph G. Sauder[*]
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0580
Facsimile:   (610) 727-4360
E-Mail:     jgs@sstriallawyers.com
              mds@sstriallawyers.com
              jbk@sstriallawyers.com

Daniel O. Herrera[*]
State Bar No. 6296731
John Scheflow[*]
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782 4880
Fax: 312-782-4485
dherrera@caffertyclobes.com
jscheflow@caffertyclobes.com

Bryan L. Clobes[*]
1101 Market Street Suite 2650
Philadelphia, PA 19107
Telephone: (215) 864-2800
Fax: (215) 964-2808
bclobes@caffertyclobes.com

*Counsel for Plaintiff and the Putative Class*

---

[*] These attorneys have submitted, or will be submitting, applications for pro hac vice admission.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.

By:      */s/Daniel R. Karon*